## HERMAN SHARK v. GREAT NORTHERN RAILWAY COMPANY.

(164 N. W. 39.)

**Bill of lading — provisions of — claims for loss — time of making — delivery of goods — reasonable time.**

1. The filing of a written claim four months after goods have been shipped from Devils Lake, North Dakota, to New York, is not a compliance with the requirement of a bill of lading to the effect that "claims for loss, damage, or delay must be made in writing within four months after delivery of the prop-

NOTE.—Of general interest, see notes in 7 L.R.A.(N.S.) 1041, and L.R.A.1916D, 341, on reasonableness of time fixed in contract of shipment of live stock for presentation of claim for damages.

erty, or in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed."

**Bill of lading — provisions of — claim for loss — time of filing — oral complaint — to shipping agent — failure to deliver — advice of agent — to claimant.**

2. A provision in a bill of lading that a written claim of loss must be made within four months after a reasonable time for delivery has elapsed is not for . the purpose of escaping liability, but to facilitate prompt investigation, and is *held* to have been sufficiently complied with when, prior to the expiration of the four months' period, oral complaint was made to the company's shipping agent of its failure to deliver, and the company acted on such complaint, and not only promised the shipper to send tracers and to make an investigation, but complied with its promise, and a month after such complaint the shipper was advised by the agent to wait a little longer, as he understood that the goods had been sold.

Opinion filed July 28, 1917. Rehearing denied July 28, 1917. .

Action to recover on shipping contract.

Appeal from the District Court of Ramsey County, Honorable *C. W. Buttz,* Judge.

Affirmed.

*Murphy & Toner* and *Flynn & Traynor,* for appellant.

The shipment here in question is interstate, and comes under the Carmack amendment to the Hepburn Act, and the questions to be determined are controlled exclusively by the decisions of the United States courts. Missouri, K. & T. R. Co. v. Harriman, 227 U. S. 657, 57 L. ed. 690, 33 Sup. Ct. Rep. 397; Chicago, St. P. M. & O. R. Co. v. Latta, 226 U. S. 519, 57 L. ed. 328, 33 Sup. Ct. Rep. 155; Chicago, M. & St. P. R. Co. v. Solan, 169 U. S. 133, 42 L. ed. 688, 18 Sup. Ct. Rep. 289; Pennsylvania R. Co. v. Hughes, 191 U. S. 477, 48 L. ed. 268, 24 Sup. Ct. Rep. 132; Hepburn Act, 34 Stat. at L. 584, Comp. Stat. 1916, § 8563; Adams Exp. Co. v. Croninger, 226 U. S. 491, 57 L. ed. 314, 44 L.R.A.(N.S.) 257, 33 Sup. Ct. Rep. 148; Chicago, B. & Q. R. Co. v. Miller, 226 U. S. 513, 57 L. ed. 323, 33 Sup. Ct. Rep. 155; Chicago, R. I. & P. R. Co. v. Cramer, 232 U. S. 490, 58 L. ed. 697, 34 Sup. Ct. Rep. 383; Bartels Northern Oil Co. v. Jackman, 29 N. D. 236, 150 N. W. 576; Cook v. Northern P. R. Co. 32 N. D. 340, L.R.A.1916D, 345, 155 N. W. 867; Wabash R. Co. v. Thomas, 222 Ill. 337, 7 L.R.A. (N.S.) 1041, 78 N. W. 777.

The conversations plaintiff had with defendant's local agent are wholly immaterial, and not binding on defendant. The bill of lading provides how and when a claim for loss must be made. It is the contract between the parties. The agent had no authority to say or do anything contrary to its provisions, and no such authority is attempted to be shown. If the agent had any such authority then what he and plaintiff agreed upon would constitute a new contract and this is not pleaded, and the evidence offered to establish same was inadmissible. Clegg v. St. Louis & S. F. R. Co. 122 C. C. A. 273, 203 Fed. 971; Knapp v. Minneapolis, St. P. & S. Ste. M. R. Co. 34 N. D. 466, 159 N. W. 81; Northern Assur. Co. v. Grand View Bldg. Asso. 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133; Sullivan v. Mercantile Town Mut. Ins. Co. 20 Okla. 460, 129 Am. St. Rep. 761, 94 Pac. 676; Missouri, K. & T. R. Co. v. Kirkham, 63 Kan. 255, 65 Pac. 261, 10 Am. Neg. Rep. 263.

Plaintiff's agent, with full and ample authority, signed the bill of lading on behalf of plaintiff, and it is the only contract in this case. Jennings v. Grand Trunk R. Co. 52 Hun, 227, 5 N. Y. Supp. 140; Soumet v. National Exp. Co. 66 Barb. 284; Moriarty v. Harnden's Exp. 1 Daly, 227; Meyer v. Harnden's Exp. 24 How. Pr. 290; Craycroft v. Atchison, T. & S. F. R. Co. 18 Mo. App. 487; Nelson v. Hudson River R. Co. 48 N. Y. 498; Squire v. New York C. R. Co. 98 Mass. 239, 93 Am. Dec. 162; Shelton v. Merchants' Dispatch Transp. Co. 59 N. Y. 258; Van Schaack v. Northern Transp. Co. 3 Biss. 394, Fed. Cas. No. 16,876; Cincinnati, H. & D. R. Co. v. Berdan, 22 Ohio C. C. 326, 12 Ohio C. D. 481; Wells, F. & Co's Exp. v. Fuller, 4 Tex. Civ. App. 213, 23 S. W. 412.

Failure to read the bill of lading does not exonerate Chesapeake & O. R. Co. v. McLoughlin, 242 U. S. 142, 61 L. ed. 207, 37 Sup. Ct. Rep. 40.

The bill of lading provides that a claim for loss must be made within four months, and this is a reasonable and valid provision. Adams Exp. Co. v. Croninger, 226 U. S. 491, 57 L. ed. 314, 44 L.R.A.(N.S.) 257, 33 Sup. Ct. Rep. 148; Chicago, B. & Q. R. Co. v. Miller, 226 U. S. 512, 57 L. ed. 323, 33 Sup. Ct. Rep. 155; Missouri, K. & T. R. Co. v. Harriman, 227 U. S. 657, 57 L. ed. 690, 33 Sup. Ct. Rep. 397; Southern Exp. Co. v. Caldwell, 21 Wall. 268, 22 L. ed. 556; 6 Cyc. 505.

*Siver Serumgard* and *C. A. Conant,* for respondent.

The equities are clearly against the defendant. Its only defense is that plaintiff failed to give the notice required by the uniform bill of lading. This is merely technical. The question of reasonable notice is one of fact, to be determined from all the circumstances in the case. Wabash R. Co. v. Thomas, 7 L.R.A. (N.S.) 1041, note.

"Where the carrier by his own act rendered it impossible for the shipper to give notice within the time limited by the contract, it has been held that the failure to give such notice could not bar a recovery." Ibid.; Gulf, C. & S. F. R. Co. v. York, 2 Tex. App. Civ. Cas. (Willson) 718; Richardson v. Chicago & A. R. Co. 149 Mo. 311, 50 S. W. 782; Baker v. Missouri P. R. Co. 19 Mo. App. 321; Cook v. Northern P. R. Co. 32 N. D. 340, L.R.A.1916D, 345, 155 N. W. 867.

Service of the required notice may be waived, and it was waived in this case by the acts, statements, and conduct of defendant's local agent. Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335.

BRUCE, Ch. J. This is an action to recover damages for the loss or failure to safely carry and deliver, at New York, certain articles of clothing shipped by the plaintiff over the line of the defendant railway company.

The action is an action for the breach of a common carrier's contract of carriage. The complaint is as follows:

"That on the 9th day of October, 1913, for value, the defendant *agreed safely to carry to the city of New York* in the state of New York and there deliver to Rosenthal, Siegel, & Company certain goods, the property of the plaintiff, of the value of $48, consisting of six overcoats, which described goods the plaintiff then and there delivered to the defendant, who received the same *upon the agreement and for the purposes before mentioned.*

"That the defendant *did not safely carry and deliver the said goods pursuant to the said agreement,* but, on the contrary, so negligently conducted and so misbehaved in regard to the same *in his calling as carrier,* that they were wholly lost to the plaintiff, who is damaged in the sum of $48.

"Wherefore, plaintiff demands judgment against the defendant for the sum of $48, and for his costs and disbursements herein."

The defense of the railway company is:

"That said shipment was delivered by the plaintiff to the defendant and shipped by the defendant under an agreement with the said plaintiff in accordance with a uniform bill of lading in accordance with the regulations of the Interstate Commerce Commission, and particularly in compliance and under authority of the statute and laws of the United States with reference to interstate commerce under the Act of February 4, 1887, 24 Stat. at L. 379, chap. 104, as amended by the Act of June 29, 1906, 34 Stat. at L. 584, chap. 3591, Comp. Stat. 1916, § 8563, which uniform bill of lading contained a provision in effect that no liability would rest upon the said defendant for any loss occasioned under said contract, *unless a claim for damage thereunder was made within four months after the delivery of the property to the defendant, or in any event within four months after a reasonable time for delivery to the consignee* had elapsed, and the said shipment was made and accepted under said bill of lading and under the Federal law having reference thereto, the same being an interstate shipment.

"Alleges that the claim of the plaintiff for said alleged loss was not presented within four months after the delivery of the property to the defendant for shipment, nor within four months after a reasonable time for delivery to the consignee had elapsed, and that therefore no liability rests upon the carrier, the defendant, for the loss thereof, as provided by the uniform bill of lading, paragraph 3, under which said shipment was received and shipped."

The clause of the bill of lading referred to was as follows:

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin, within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

The evidence shows that the goods were shipped on August 7, 1913, and that no written claim was made until April 1, 1914. It also shows that no inquiry in regard to the goods was made of the railway company until about December 1, 1913, when complaint was made to

the local agent at the point of shipment, and he stated that he would have the goods traced. It does show, however, that the complaint or inquiry was made within four months after a reasonable time for the delivery had elapsed, and as soon as plaintiff became aware of the failure to deliver. The evidence, indeed, showed that the goods were articles of clothing which the plaintiff, a retail dealer, sought to return to his wholesaler or jobber in New York and to be allowed credit thereon, and that the plaintiff only became aware of the failure of delivery when, on receiving a bill or statement from New York, he found that no credit had been allowed to him.

Plaintiff testifies that at this time he went to see the local agent of the railway company, and told him that he had better trace the goods and see what was the matter, and that the agent stated that he would do so. He also testified that about a month later he "went down again. He (the agent) told me something I didn't understand about the goods being sold, and he said to wait a little longer, and so a month more and I went down and it was the same thing, and so finally he says, I will make a special effort to see the special agent that comes through here to look after this matter."

The plaintiff then testifies that he went away and "one day he (the agent) called me and said that the claim was filed too late, and so I turned the claim over to my attorneys, and they filed."

There is also evidence that on the 9th day of January, 1915, the railway company wrote to the plaintiff as follows:

I am returning papers in your claim, loss of coats, $48, which was presented April 1, 1914.

We cannot entertain this claim for payment, inasmuch as same was not filed within the four months' time limit for filing claims as required in paragraph 3 of § 3 on the back of the regular bill of lading.

We have endeavored to establish identity of the case of coats which checked over with this company and was sold. However, it develops that there is no connection between the two shipments. We have investigated this matter to some limit, endeavoring to identify this case as being the case shipped by your company, which is the cause of the delay in our handling the matter.

I trust that the matter is understood and that our files may remain closed.

Yours truly,
G. W. Perry,
F. C. A.

The evidence also discloses that C. A. Conant, one of the attorneys for plaintiff, was shown this letter, and, after reading it, went to see Murphy, the local agent of the company, and was then told by Murphy that "he had traced the goods and found they were sold at St. Paul by the Great Northern Railway Company," and that "the case of overcoats that was sold in St. Paul was a case containing six overcoats, and that inside the neck they had a label piece with Shark's name, and he had no doubt but that it was the same box of coats."

Even if these admissions of the agent are admissible as against his principal, and his "no doubt" can be considered as evidence against the positive statement contained in the letter from headquarters, they were made after the time for making the claim had expired and after the time when a recovery under the bill of lading could be had, unless the provisions of such bill of lading were and could be waived, or the notice given was in fact sufficient.

There is no proof, indeed, that this sale, if sale there was, took place prior to the expiration of the four months' period of time. The action at any rate is based upon the failure of the contract of delivery, and not on the conversion of the goods after the time for delivery had expired, and after the time for making claim therefor had elapsed, and the appeal must be considered from that viewpoint.

We are satisfied that the formal written claim was not filed within "four months after a reasonable time for delivery had elapsed." It was not filed until nearly eight months after the date of delivery to the initial carrier. This would leave four months for making the delivery, and this can hardly be deemed as reasonable time.

Nor, too, under the holdings of the Supreme Court of the United States in the cases of Georgia, F. & A. R. Co. v. Blish Mill Co. 241 U. S. 190, 197, 60 L. ed. 948, 952, 26 Sup. Ct. Rep. 541, and Missouri K. & T. R. Co. v. Ward, 244 U. S. 383, 61 L. ed. 1213, 37 Sup. Ct. Rep. 620, could the parties waive the requirement of notice, as such waiver

would amount to a discrimination, "would antagonize the plain policy of the Carmack amendment, and open the door to the very abuses at which the act was aimed."

Can it, however, be said and held that the requirements of the bill of lading as to the written notice within the four months' period was substantially complied with, and a recovery be justified on that fact? We think it can.

As far as we can learn, the two cases just cited as yet contain the only announcements of the Supreme Court of the United States upon the subject, though counsel for appellant also cites the case of Northern P. R. Co. v. Wall, 241 U. S. 87, 60 L. ed. 905, 36 Sup. Ct. Rep. 493. In the case of Northern P. R. Co. v. Wall, supra, however, no such question was considered or passed upon. All that the court considered was a stipulation in the bill of lading to the effect that the shipper, in case of loss or injury, should give notice in writing of his claim to some officer or station agent "of said company before the cattle were removed from the place of destination and mingled with other stock." All that the court really passed upon was the meaning of the word "said," and all that it held was that the bill of lading must be construed in connection with the Carmack amendment, which makes the initial carrier responsible for the whole journey, and the connecting carrier its agent for completing the transportation and delivering the property. It held that, since the connecting carrier was the agent of the first, a notice of the injury to the cattle could and should have been made to such second carrier before the stock was unloaded and mingled with other cattle, and that the failure to give such notice could not be excused by the mere fact that the Northern Pacific Railway Company did not run into the city of Chicago, and had no local or general agent there; and that, since no notice was either given to the C. B. & Q. R. Co., the connecting carrier, or to the Northern Pacific Railway Company, at the point of shipment, no recovery could be had.

But in the case of Georgia F. & A. R. Co. v. Blish Mill Co. supra, the point was passed upon, and the court held that telegraphic advice to the terminal carrier, of the defective condition of the property shipped, which was flour, and to the effect that the shipper made claim for its entire value at invoice price, on account of the damage, was a sufficient compliance with the requirement of a written claim. In speak-

ing of the requirement, it said: "The purpose of the stipulation is not to escape liability, but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier, by its contracts, should require reasonable notice of all claims against it, even with respect to its own operations." It held that the fact of this stipulation could not be avoided by the mere form of the action; that is to say, whether the action was in trover or for breach of the contract.

In speaking of the nature of the claim made, it, however, said:

"But, while this is so, we think that the plaintiff in error is not entitled to succeed in its ultimate contention under the stipulation, for the reason that it appears that notice of the claim was in fact given. It is true that in the statement made by the court of appeals it is said that so far as appears from the record 'no claim was filed by the shipper.' We must assume, however, that this was in effect a construction of the provision as requiring a more formal notice than that which was actually sent. For the court had already set forth the uncontroverted facts in detail, showing that the shipper (having made an investigation in response to the communication of the traffic manager of the railway company) had telegraphed to the latter, on June 7, 1910, only five days after the arrival of the goods at destination, as follows: 'We will make claim against railroad for entire contents of car at invoice price. Must refuse shipment, as we cannot handle.' In the preceding telegrams, which passed between the parties and are detailed by the state court in stating the facts, the shipment had been adequately identified, so that this final telegram, taken with the others, established beyond question the particular shipment to which the claim referred, and was in substance the making of a claim within the meaning of the stipulation,— the object of which was to secure reasonable notice. We think that it sufficiently apprised the carrier of the character of the claim; for while it stated that the claim was for the entire contents of the car 'at invoice price,' this did not constitute such a variance from the claim for the value of the flour as to be misleading; and it is plain that no prejudice resulted. Granting that the stipulation is applicable and valid, it does not require documents in a particular form. It is addressed to a practical exigency, and it is to be construed in a practical way. The stipulation required that the claim should be made in writ-

ing, but a telegram which in itself or taken with other telegrams contained an adequate statement must be deemed to satisfy this requirement."

The case of Missouri, K. & T. R. Co. v. Ward, 242 U. S. 383, 61 L. ed. 1213, 37 Sup. Ct. Rep. 620, in no way questions this holding. And if we apply it to the case at bar we are of the opinion that here also there was a substantial compliance.

The proof, indeed, shows conclusively that, prior to the expiration of the four months, oral complaint was made to the railway company of its failure to deliver the goods, and that the railway company acted on this complaint, and not only promised the plaintiff to send tracers and to make investigation, but complied with its promise. The shipper made no written complaint, but the agent made it for him. The railway company had all the information and notice that it desired. The provision in the bill of lading was merely for the protection of such company, and to protect it against fraudulent claims and claims which were so stale that a proper investigation could not be had.

"The purpose of the stipulation," says the Supreme Court of the United States in the case of Georgia, F. & A. R. Co. v. Blish Mill Co. 241 U. S. 190, 197, 60 L. ed. 948, 952, 26 Sup. Ct. Rep. 541, "is not to escape liability, but to facilitate prompt investigation;" and, if this investigation is facilitated, all that is purposed by the provision is accomplished.

The judgment of the District Court is affirmed.

Robinson, J. (concurring). In this case the plaintiff sues to recover $48 as the value of six overcoats which he delivered to the defendant as a common carrier to be conveyed to Rosenthal, Seigel, & Company, New York city. In justice court and in the district court plaintiff recovered a judgment for $48 and costs, and the defendant appeals to this court.

As a conclusion of fact the district judge found as follows:

That on or about the 9th day of September, 1913, for value, the defendant agreed safely to carry to the city of New York and there deliver to Rosenthal, Seigel, & Company the property described in the complaint, of the value of $48, consisting of six overcoats, which were delivered to the defendant and which it received under said agreement.

That the defendant failed to deliver the goods, and that by its negligence and lack of care the goods were lost in transit and afterwards, before the commencement of this action, the defendant sold and converted the same to its own use at St. Paul, Minnesota, and retained the proceeds of the sale.

The findings are sustained by convincing evidence. Hence, it is needless to consider any other question. Regardless of anything in the bill of lading, the defendant must answer for its own wrongs and for the conversion of the goods.

The judgment is affirmed.