SOUTHERN PAC. CO. v. STEWART.*

(Circuit Court of Appeals, Ninth Circuit.   July 3, 1916.)

No. 2745.

1. CARRIERS ☞228(3)—CARRIAGE OF LIVE STOCK—DAMAGES—EVIDENCE.
     In an action for negligently unloading cattle for rest in pens which were dusty and unprotected from the sun, evidence that the pens were similar to pens on other portions of the carrier's line is inadmissible for it is no defense to the negligence charged that the carrier was guilty of similar acts of negligence.
     [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960;  Dec. Dig. ☞228(3).]

2. CARRIERS ☞210—CARRIAGE OF LIVE STOCK—ACTIONS—DEFENSES.
     The Twenty-Eight Hour Act (Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [Comp. St. 1913, § 8651]), requiring the unloading of cattle for resting and feeding within that time unless the shipper consents that they be carried for a continuous period of 36 hours, requires the cattle to be unloaded in properly equipped pens for resting, watering, and feeding, and a carrier cannot justify its act in unloading in hot and dusty pens by reason of the law.
     [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 924;  Dec. Dig. ☞210.]

3. CARRIERS ☞230(4)—CARRIAGE OF LIVE STOCK—ACTIONS—JURY QUESTION.
     In an action for injuries to cattle which were unloaded for rest and food in a hot, dusty pen, unprotected from the sun, where until that time they were in good condition, the court cannot as a matter of law hold that the injuries to the cattle resulted, not from the place of unloading, but because they were transported from a cool climate to a hot, dry one.
     [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962;  Dec. Dig. ☞230(4).]

4. TRIAL ☞252(7)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.
     Where the claim for injuries to cattle was that they were unloaded in hot, dusty pens, unprotected from the sun, an instruction on the shipper's failure to discharge his duty to load and reload the cattle at resting places en route is inapplicable to the evidence, and properly refused.
     [Ed. Note.—For other cases, see Trial, Cent. Dig. § 602;  Dec. Dig. ☞252(7).]

5. TRIAL ☞253(3)—INSTRUCTIONS—IGNORING ISSUES.
     Where a shipper claimed that his cattle were injured because the carrier negligently unloaded them to water, feed, and rest in pens unprotected from the hot sun, an instruction to find for the carrier if it was more humane to unload the animals as done than to have continued the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 9, 1916.

journey is improper, as ignoring the right of the shipper to control the shipment and require direct transportation upon executing a release for injuries for confinement beyond the 28-hour period.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 616; Dec. Dig. ⟶ 253(3).]

**6.** CARRIERS ⟶218(10)—CARRIAGE OF LIVE STOCK—WRITTEN NOTICE OF INJURY—NECESSITY.

Where a carrier was well acquainted with the injuries to plaintiff's cattle, and frequent communications were interchanged, the carrier's liability being recognized, recovery by the shipper cannot be defeated on the ground that he failed to give written notice within 10 days after unloading at destination, as required by the contract of shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674-696, 947; Dec. Dig. ⟶218(10).]

**7.** CARRIERS ⟶218(7)—CARRIAGE OF LIVE STOCK—ACTIONS—DAMAGES.

Where a contract for the shipment of live stock fixed the maximum recovery at $30 per head for cattle injured or lost, a recovery for injuries to cattle may be had, though the value of the animals after the injuries exceeded the value fixed; the provision not fixing the maximum value for death and a proportional recovery for injuries.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674-696, 946; Dec. Dig. ⟶218(7).]

**8.** APPEAL AND ERROR ⟶221. — PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Though a shipping contract provided that the damages should be adjusted on the basis of the value of the animals at the time and place of shipment, a carrier cannot complain, in action for injuries to a shipment of cattle, that damages were assessed on the basis of the value of the animals at the place of destination; evidence thereof being received without objection, and there being no showing that the value at the place of shipment differed from that at the place of destination.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1353-1355; Dec. Dig. ⟶221.]

**9.** APPEAL AND ERROR ⟶231(9)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—GENERAL EXCEPTIONS.

Where part of a charge is correct, a general exception to the whole will not bring up for review those portions which are erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⟶231(9); Trial, Cent. Dig. §§ 689, 690, 694, 696.]

In Error to the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

Action by Frank R. Stewart against the Southern Pacific Company, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error, as plaintiff in an action in the court below, recovered a judgment against the defendant therein in the sum of $2,090 damages for injuries to dairy cows shipped by the plaintiff on July 1, 1913, from San Luis Obispo, Cal., over the defendant's road and that of its connecting carrier, to Phœnix, Ariz. In the complaint it was alleged that the defendant negligently unloaded the animals on July 4, 1913, at Yuma, Ariz., when the weather was extremely hot, and into pens which were dusty and unprotected from the sun, instead of transporting them to their destination. To this it was answered that at the time when the cattle arrived at Yuma they had been confined in the cars for about 20 hours without feed, water, or rest, and that it was necessary to unload them at that place in order to comply with the Twenty-Eight Hour Law. Further answer was made that the cat-

tle were being transported under a contract in writing whereby the plaintiff agreed that, in case of loss or damage to the cattle, notice in writing should be given to the defendant within 10 days after unloading at destination, that otherwise all claims for loss or damage were waived, and that the plaintiff failed to give such notice within the time specified. It was further alleged that in said writing it was further stipulated that the agreed value of the cattle was the sum of $30 per head, and that, in case of loss or damage for which the carrier might be liable, the amount claimed for each animal so lost or damaged should be adjusted on the basis of that agreed value, and that the contract was made and entered into in consideration of the plaintiff obtaining a lower freight rate than would have been assessed, had a higher valuation been placed upon the animals.

J. C. Forest, of Phœnix, Ariz., and Francis M. Hartman, of Tucson, Ariz., for plaintiff in error.

Hayes & Laney, of Phœnix, Ariz., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Several assignments are addressed to alleged errors of the trial court in sustaining objections to testimony offered by the defendant, the object of which was to show that the feeding and rest pen at Yuma was maintained in as good condition as was customary with railroads in the Southwest, and in as good condition as pens and corrals at El Paso, Tex., Tucson, Bowie, and Phœnix, Ariz., and Indio, Cal. The evidence so offered would have tended only to show that the treatment of the plaintiff's cattle at Yuma was the usual and ordinary treatment of cattle by the defendant and other carriers in that section of the country, or sections similar in climate. The evidence, if admitted, would not have tended to acquit the defendant of negligence. It would have been no defense to the negligence charged to prove that the defendant committed similar acts of negligence elsewhere. G. Trunk R. R. Co. v. Richardson et al., 91 U. S. 454, 23 L. Ed. 356.

[2, 3] Error is assigned to the denial of the defendant's motion for an instructed verdict in its favor. The grounds of the motion were that it was necessary for the defendant to unload the cattle at Yuma in order to comply with the Twenty-Eight Hour Law, that the plaintiff abandoned his cattle at that point, and that the damage was the result of his own gross negligence. The evidence was undisputed that the defendant's cattle pens at Yuma were open corrals in the sand, wholly without shade or covering of any kind, that the weather was very hot, that the cattle arrived at Yuma in good condition, and that the plaintiff earnestly and repeatedly protested against unloading the same at that point, and offered to sign and deliver to the defendant a release of all liability for forwarding the shipment to Gila, at which point the defendant had feed and rest pens. It is clear that under the pleadings and the evidence the defendant was not entitled to an instructed verdict. Twenty-Eight Hour Act, § 1, required that the unloading should be into "properly equipped pens for rest, water, and feeding." Act June 29, 1906, c. 3594, 34 Stat. 607 (Comp. St. 1913, § 8651). The evidence tended strongly to show that the pens at Yuma were not properly equipped for rest, and there was evidence tending to show

that the cattle could have been carried to Gila within the 28-hour period, and to Phœnix within the 36-hour period, and that, but for the defendant's persistent refusal to go further, the plaintiff would have given it a written consent to carry the cattle on to Phœnix without unloading. In charging the jury the court said:

"It is for you, and you alone, to determine whether or not the corrals and pens provided by the defendant company at Yuma were such as the law requires railroads to furnish for the proper unloading, feeding, and resting and watering of cattle."

The court would not have been justified in ruling, as a matter of law, that the injury to the cattle resulted from their shipment from a cool, moist climate into an extremely hot climate, or that it resulted solely from the climatic conditions at Yuma. It is not disputed that the cattle arrived there in good condition, and it may be assumed that they might have been carried on their way without injury, if they had not been unloaded into the pens which the jury evidently found unfit for the purpose for which they were used.

[4] Error is assigned to the refusal of the court to instruct the jury that if the plaintiff failed or neglected to attend to unloading and reloading his cattle at Yuma, or failed or neglected properly to care for his cattle at Yuma, the defendant will not be liable for any loss or damage due to such failure on the plaintiff's part. It is contended that the defendant was entitled to that instruction, for the reason that the plaintiff had agreed and bound himself to unload and reload the cattle at the resting places, and to feed and water the same at his expense, and to accompany and attend to them en route. The requested instruction was not appropriate to any of the evidence in the case. The cause of injury to the cattle was not the manner of their unloading or their care, but the fact that they were placed in pens unfit for rest and feeding.

[5] Nor do we find that the trial court erred in denying the special instruction requested by the defendant to the effect that if the jury believed that at the time when the cattle arrived at Yuma they had been confined in the cars approximately 19 hours without feed or rest, and that it was more humane and better for them to be unloaded at Yuma for feed and rest than to transport them beyond that point and keep them confined in the cars, their verdict should be in favor of the defendant, and that, if they believed it was less injurious to said animals to unload them at Yuma than to have kept them confined for 9 hours or 18 hours longer, they should find for the defendant. These instructions were open to the objection that they ignored the right of the plaintiff to control the shipment. He had the right, if he so elected, to require the defendant to carry them on under his release in writing, which he repeatedly offered to execute. Again, the effect of the instructions, if given, would have been to permit the jury to disregard all the evidence of the defendant's negligence in failing to maintain at Yuma proper pens for feeding and rest.

[6] The defendant urges that the court below erred in refusing to charge, as requested, that the plaintiff could not recover for any loss or damage to the cattle, for the reason that he failed to make written

demand on the defendant within 10 days after unloading at the final destination, when he knew of all the damage to the cattle, or could, by the exercise of reasonable diligence, have known the same. The requested instruction was in accordance with the defense pleaded in the defendant's answer. To that defense the plaintiff had replied that he was relieved from compliance with the provision as to notice in writing within 10 days by the facts that on July 4, 1913, and at all times subsequent thereto, the defendant had full knowledge and notice of the injuries and damages to the plaintiff's cattle; that prior to reloading the cattle on that day, 5 of them had died; that the defendant found it necessary to provide an additional car in which to reload 13 of the crippled and sick cattle; that at various points between Yuma and Phœnix the train officials in charge of the shipment received telegraphic inquiries from other officials of the defendant inquiring as to the condition and welfare of the cattle; that after arrival at Phœnix, one of the crippled animals remained in the defendant's car for more than a week; that from the unloading of the shipment at Phœnix until October 21st of that year the plaintiff and the agents of the defendant and its connecting carrier were almost daily in communication relative to the damages sustained by the plaintiff; that the nature and extent of the injuries to the cattle which arrived alive were such as to render it impossible to determine the amount and extent thereof within the 10-day period; that a number thereof died many days after their arrival at Phœnix as the result of such injuries; and that the defendant on many occasions prior to October 21st recognized the plaintiff's right to recover on account of his damages. There was proof tending to sustain all the facts so alleged in the reply. We think, therefore, that the court below committed no error in instructing the jury that in view of the evidence, if they found it to be true, the plaintiff was relieved and released from giving notice within the 10 days. Cockrill v. Missouri, K. & T. Ry. Co., 90 Kan. 650, 136 Pac. 322, and cases there cited; Pierson v. Northern Pac. Ry. Co., 61 Wash. 450, 112 Pac. 509; Chicago, R. I. & P. Ry. Co. v. Spears, 31 Okl. 469, 122 Pac. 228; Missouri, K. & T. Ry. Co. v. Frogley, 75 Kan. 440, 89 Pac. 903; Adams v. Colorado & S. Ry. Co., 49 Colo. 475, 113 Pac. 1010, 36 L. R. A. (N. S.) 412.

[7] In the contract between the plaintiff and the defendant it was stipulated, in consideration of the freight rate, that the value of the cattle should be taken and deemed to be $30 per head. The plaintiff in his complaint demanded the sum of $30 per head for 11 cows lost, and $20 per head for injury to 87 head that survived. The defendant contends that it was entitled to have the jury instructed that if the animals after delivery at destination were still of the value of $30 per head, together with the freight charges, plaintiff was not entitled to recover anything for damages thereto. We think the defendant was not entitled to the requested instruction. The stipulation as to the amount recoverable for loss or damage to cattle was intended only for the purpose of fixing a limit to the amount to be recovered in case either of loss or damage. It did not fix the value as $30 for loss, and for a proportionate limit in case of damage. 5 Am. & Eng. Enc. of Law, 335; Starnes v. Railroad, 91 Tenn. 516, 19 S. W. 675.

[8] The defendant assigns error to the court's instruction to the jury that the measure of damages for the cattle injured would be the difference between the market value of such cattle in their normal condition after making the trip from the point of shipment to Phœnix, and the condition in which they were actually delivered at Phœnix, not to exceed $30 per head. It is said that this instruction is contrary to the provision of the shipping contract, which stipulated that damages would be adjusted on the basis of value at the "time and place of shipment; not exceeding the declared value." The defendant is in no position to claim reversible error in the instruction so given. All the testimony as to value was given with reference to the value of the cattle after their arrival at Phœnix. No exception was taken to the evidence so given, nor does it appear that the values of the cattle at Phœnix were different from their values at San Luis Obispo. It is not shown, therefore, that the defendant could have been prejudiced by the instruction.

[9] The record shows, also, that the defendant took no proper exception to that precise portion of the charge. The exception taken included a general charge covering other matters, some portions of which were not subject to objection. We find no error.

The judgment is affirmed.

------

⬤➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes