ALF EDMONSON, RESPONDENT, v. MISSOURI PACIFIC RAILROAD CO., APPELLANT.*

In the Springfield Court of Appeals. Opinion filed July 17, 1926.

**1.—Carriers—Circumstances of Signing Contract Held Not to Show Fraud.** Plaintiff's testimony in personal injury action that defendant's agent said he had better sign bill of lading, and that he signed it and did not know that it was a caretaker's contract, relied upon as a defense, and not a bill of lading, and if he had known its provisions he would have complied with them, **held** insufficient to show fraud.

**2.—Same—Caretaker's Contract—Purpose of Provision Requiring Notice of Injury.** Purpose of provision in caretaker's contract, executed by cattle shipper, that in case of personal injury written notice should be given within thirty days, is to give the carrier an opportunity to investigate the facts while they can be easily obtained.

**3.—Same—Caretaker Injured While Accompanying Interstate Shipment—Contract Provision Requiring Notice of Injury—Governed by Common Law.** Right of cattle caretaker accompanying interstate shipment to recover from carrier for personal injury, and duty to give notice of such injury, **held** governed by common law, notwithstanding agreement that written notice should be given within thirty days was required under regulation that was part of carrier's tariff filed with Interstate Commerce Commission; Interstate Commerce Law being inapplicable to personal injury cases.

**4.—Same—Same—Same—May be Waived under Common Law.** Under the common law, a carrier may waive a provision for written notice of injury to caretaker of cattle.

**5.—Same—Same—Same—Provision Held Waived by Acts of Defendant.** Where carrier immediately proceeded to investigate injury to cattle shipper, and its physician examined him and its claim agent tried to settle with him, **held**, that provision in caretaker's contract requiring thirty days' written notice in case of personal injury was waived by carrier.

**On Motion For Rehearing.**

**6.—Same—Evidence Regarding Signing of Contract Held Insufficient to Take Question of Fraud to Jury.** Plaintiff's testimony that he could not read, and that defendant's agent told him he had better sign bill of lading,

and that had he been told it was a caretaker's contract he would not have signed it, **held** insufficient to take question of fraud to jury.

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 995, n. 78; p. 1057, n. 33; p. 1067, n. 76.

Appeal from the Circuit Court of Butler County.—Hon. Chas. L. Ferguson, Judge.

REVERSED AND REMANDED.

*James F. Green* and *J. C. Sheppard* for appellant.

(1)   The court erred in overruling the defendant's motion to strike out the amended replication of the plaintiff for the reason that it states no cause of action, or no reason why the livestock contract was not valid.   It merely states that the station agent represented to the plaintiff that the livestock contract was a bill of lading and fails to state that it was not.   As a matter of fact it was.   4 Elliott on Railroads (3 Ed.), p. 497.   (2)   The court erred in admitting any evidence, or statements, made by the station agent at Tuckerman, and the statement of the claim agent of the defendant, for the reason that the statements were not made at the time of the accident, but afterwards; that there was no proof that they were authorized to make them; that they were hearsay and not binding upon the defendant. Tate v. Railroad, 209 S. W. 978; Redmond v. Railroad, 185 Mo. 1; Rogers v. McCune, 19 Mo. 557; McDermott v. Railroad, 73 Mo. 516; Adam v. Railroad, 74 Mo. 555-6; Aldridge v. Furnace Co., 78 Mo. 563; Devlin v. Railroad, 78 Mo. 545; Barker v. Railroad, 126 Mo. 148.   (3) The court erred in giving to the jury plaintiff's Instruction No. 1, for the reason that it required the jury to find that the local agent of the defendant only had actual knowledge and notice of plaintiff's injury, and that defendant's agents and representatives acted upon such knowledge and notice and made a full investigation of plaintiff's said injuries within thirty days' time of said injury, when there was no evidence to support these facts Degonia v. Railroad, 224 Mo. 564; State ex rel. v. Ellison, 270 Mo. 645; Jones v. Mott, 215 S. W. 913; Parker v. Drake, 220 S. W. 1000; McElvain v. Dorrah, 204 S. W. 824; Barker v. McMurray Const. Co., 221 S. W. 1070; Ostopshook v. Cohen-Schwartz R. & S. Co., 227 S. W. 642.   (4)   The court erred in giving to the jury Instruction No. 4 on behalf of the plaintiff, for the reason that it made the defendant an insurer of the plaintiff's safety by requiring its agents and servants to know that the plaintiff had no lantern, and to prevent him from violating his contract, whereby he had agreed not to walk, or stand, or any track at stations at any place at night without a lantern.   (5)   The court

erred in giving to the jury plaintiff's Instruction No. 5, which told the jury that if they believed and found from the evidence that the depot agent falsely told the plaintiff that the paper which he signed was a bill of lading, and that the plaintiff believed said statement and was deceived thereby, then the plaintiff was guilty of no negligence. This instruction is erroneous for the reason that it has no evidence to support it. If the station agent did tell the plaintiff that the paper he signed was a bill of lading it was the truth, and, therefore, he could not have been deceived thereby. 4 Elliott on Railroads (3 Ed.), page 497, sec. 2135; 10 C. J., page 192, sec. 251, and cases therein cited; 4 Elliott on Railroads (3 Ed.), page 497, sec. 2135. (6) Instruction No. 3, asked on behalf of the defendant and refused by the court, should have been given, for the reason that it clearly appears from the evidence that no false or fraudulent representations were made to the plaintiff, and the court should have declared as a matter of law that no fraud was practiced upon the plaintiff in procuring his signature to the live stock contract. 1923 Cumulative Supplement U. S. Compiled St., page 549, sec. 8563 (7); 1923 Cumulative Supplement U. S. Compiled St., secs. 8564-8565; Adams Express Co. v. Chroninger, 226 U. S. 491, and 33 S. Ct. 148; Gooch v. Oregon Short Line Railroad, 42 S. Ct. 192.

*Sam M. Phillips* for respondent.

(1)   (a)   Plaintiff's replication stated that he could not read or write further than to sign his name and that defendant's agent falsely told him he was signing a bill of lading when in truth and in fact it was a drover's contract requiring a certain notice in case of injury and requiring plaintiff to observe certain precautions while on defendant's premises and trains; that plaintiff relied on the false statements of defendant's agents, not knowing them to be false, and signed the contract, when he would not have signed it had he known what it was in truth and in fact. Defendant cannot enforce the terms of an agreement obtained in this way. 10 Corpus Juris, p. 194, Note 57; So. Pacific Railroad Co. v. Meadors, 104 Tev. 469, 140 S. W. 427; Gulf, etc., R. R. Co. v. Vasbinder (Tex. Civ. App.), 172 S. W. 763; Atchinson, etc., R. R. Co. v. Grant, 6 Tex. Civ. App. 674, 26 S. W. 286; Duholm v. Railroad Co. (Minn.), 177 N. W. 772. Fraud. If the other party induced the signor to sign the paper without reading it and the signor relied on his statement as to the contents, this will give the signor a right, if the statements are fraudulent, to avoid the contract as against him on the ground of fraud. Birdsall v. Coon, 157 Mo. App. 439, 139 S. W. 243; Magee v. Verity, 97 Mo. App. 486; Johnson v. Ins. Co., 93 Mo. App. 580; Vandergrif v. Brock, 89 Mo. App. 411; Nicol v. Young, 68 Mo. App. 448; Beck, etc. v. Obert,

54 Mo. App. 240; Groff v. Longsdon, 239 S. W. 1087; Fisher v. Construction Co., 263 S. W. 1022; 13 Corpus Juris, 371, footnote 29. Obtaining plaintiff's signature to this drover's contract, representing it to be something else, bears a striking anology to cases of "Substitution of documents." As where, for instance, a note is substituted for a receipt which the signor believed he is signing. In such cases the contract is never enforcible against the person who signs one kind of an abstract believing it to be another kind, when such belief has been induced by misrepresentations of the other party. See 13 Corpus Juris, 373, footnote 43, citing, Wright v. McPike, 70 Mo. 175; Birdsall v. Coon, 157 Mo. App. 459, 139 S. W. 243; Nicol v. Young, 68 Mo. App. 448; Cole v. Wiedman, 19 Mo. App. 7. A bill of lading issued to a consignor and in his hands, is subject to any meritorious defense against it, the same as in any other contract. Port Huron Mach. Co. v. Railroad, 201 N. W. 779. (b) It is not true that what plaintiff signed was a "bill of lading," but to the contrary thereof, it was a separate and distinct contract. It was a "Drover's Contract" between the railroad company and the party who should have charge of the stock as drover or caretaker. The only connection it had with the bill of lading was the fact that the bill of lading was printed on one side of a sheet of paper and this drover's contract was printed on the other side of the same sheet of paper. A bill of lading is a contract susceptible of an exact legal definition and the contract that plaintiff signed does not fit, at any place, the definition of a bill of lading. (2) Statements and questions of claim agent in investigation of plaintiff's injury competent in evidence. (a) There is no statement of the defendant's station agent that we can find in appellant's abstract of the record that was objected to by appellant, and so this point drops out of the case. Appellant cannot object to testimony for the first time in the appellate court. (b) The questions asked and statements made by defendant's Claim Agent Kendall were competent, as showing actual knowledge of plaintiff's injury, and the acting thereon by defendant's claim department within thirty days of the injury, by making a full and complete investigation of the time when, and the place where plaintiff was injured, and the nature and extent thereof, and trying to settle with him for the same. All of this testimony is competent under the opinion of this court on former appeal which is "The law of the case." Edmondson v. Mo. Pac. R. R. Co., 264 S. W. 474.

COX, P. J.—Action for damages for personal injury. Plaintiff recovered and defendant appealed.

This is the second appeal in this case. The first is reported in 264 S. W. 470, to which reference is made for a full statement of facts. At the former hearing in this court the case was remanded for a new

trial. Upon the second trial, a reply was filed alleging that plaintiff was induced to sign the ''Drovers' Contract'' relied upon as a defense, by the fraud of the agent of defendant in representing to plaintiff that said contract was a bill of lading and plaintiff was deceived thereby because he could not read but could only sign his name and that he did not know the contents of the Drovers Contract which he had signed. The issue of fraud was submitted to the jury and it is now contended that the evidence did not sustain the charge and the instructions submitting that issue should not have been given. There is no evidence that the agent of defendant knew that plaintiff could not read or did not know the contents of the contract he signed. All the plaintiff testified to in relation to it was to the effect that the agent said he better sign the bill of lading and that he signed it and did not know what it contained at the time and if he had known its provisions he would have complied with it. He did not say he was induced to sign by the representation of the agent that it was a bill of lading or that he would not have signed if he had known what was in it or had known that it was a Caretakers contract and not a bill of lading. All that can be gathered from plaintiff's testimony is that the only misrepresentation made by the agent was that he spoke of the paper he signed as a bill of lading instead of a Caretakers Contract. Merely giving a paper a wrong name with nothing further appearing does not constitute fraud. The instruction submitting the question of fraud to the jury should not have been given.

The plaintiff and two others shipped some cattle from Tuckerman, Arkansas, to Dudley, Missouri, and plaintiff was to accompany them as a caretaker. He signed a caretakers contract. The defendant contends that its demurrer to plaintiff's testimony should have been sustained because the notice of injury provided by the Drovers Contract was not given. This contract, signed by plaintiff, provided: ''I hereby agree that in case of an accident . . . in which I shall receive any personal injury I will notify Issuing Carrier in writing through my home agent or other nearest or most convenient local agent of said Carrier or the General Superintendent of said Carrier of such injury and of the time, place, circumstances and extent thereof, and in default of my so doing within thirty days after the happening of such injury I hereby agree to waive any and all causes and right of action for or on account thereof, and I further agree that I shall not have any cause or right of action nor maintain any action for any injury except that for which I shall, in said notice as aforesaid, advise the said Carrier.'' A formal notice complying in terms with this provision of the Drovers Contract was not given. All the authorities agree that the purpose of such a notice is to give the carrier an opportunity to investigate the facts while they can be easily obtained. The defendant, however, did not wait for receipt

of the notice but immediately proceeded to investigate. The plaintiff was injured by falling into a ditch while going from the depot to the caboose of the train for the purpose of boarding the train at Tuckerman, Arkansas, soon after having loaded the cattle. The fact of his injury was known immediately thereafter to the agent of defendant. The injury occurred in the nighttime at about 2 o'clock A. M. The plaintiff, after the injury, obtained lodging for the night and intended to take passage for his home on a passenger train the next morning. This train was held at the station until plaintiff could be examined by a physician selected by defendant. Plaintiff purchased a ticket and, after his examination by the physician, boarded this passenger train and went to Poplar Bluff, Missouri, where he changed trains to go the remainder of the way home. At Poplar Bluff, he was met by the claim agent of defendant who inquired about his injury and boarded the next train with plaintiff and rode with him to his destination. On the train this claim agent talked over with plaintiff the facts of his injury fully and tried to settle with him. Plaintiff refused to settle at that time because he did not know the full extent of his injuries. When they separated, the claim agent of defendant told plaintiff to write him when he, plaintiff, got ready to settle. Nothing was said about the notice in writing provided for in the contract. Within thirty days from the injury, plaintiff wrote the claim agent that he was ready to settle for his injury. He received no reply and in a few days wrote another letter, still within thirty days from the date of the injury, calling attention to the former letter and stating that if settlement was not made, he would place the matter in the hands of an attorney. No more was heard from the claim agent and this suit was filed.

The contention of plaintiff is that a formal notice complying with all the requirements of the notice set out in the Drovers Contract was waived by defendant by its conduct after the injury received by plaintiff. The contention of defendant is that since this was an interstate shipment and it having been shown in the last trial that the tariff sheet of defendant with copy of bill of lading issued by it was on file with the Interstate Commerce Commission, and that the bill of lading had this Drovers Contract printed on the back thereof, that the railroad company could not waive any of its provisions. A great many cases have arisen under the Inter-state Commerce Law of Congress and the action of the Interstate Commerce Commission proceeding under that law, and courts have uniformly held that railroads, while acting under that law or under rules or regulations legally prescribed by the Interstate Commerce Commission under the law, cannot discriminate or grant preference between shippers. It is under that holding of the courts that defendant now contends that it cannot waive the giving of the written notice provided in the Dro-

vers Contract. We do not agree that waiver under the facts in this case was forbidden, as we shall see later. The writer will observe that it occurs to him that if nothing can be waived by a railroad company it should also be held that nothing can be waived by the shipper, yet, in·this Drovers Contract signed by the plaintiff in this case, he expressly agrees to waive damages for personal injury if he fails to give the notice therein provided. Further, if the non-waiver rule is to be applied to the facts in this case, then the rule itself places in the hands of a railroad company a very efficient method of granting preference by fraudulent means. If we assume, and in a legal view we must assume, that both plaintiff and the claim agent of defendant knew the law and knew the contents of the Drovers Contract requiring a certain form of notice in writing to be given within thirty days after the injury was received; then, with that knowledge, the claim agent talks over with plaintiff the facts connected with the injury and attempts then and there to settle with him, nothing being said about .the notice. The plaintiff does not settle because he does not then know the extent of his injuries. He is, however, led to believe by the conduct of the claim agent that the defendant is admitting liability and the only question left to be determined is the amount of damages to be paid to plaintiff. Under such a state of facts, no man, even with the contract before him, would ever think that it would still be necessary to give the formal notice of the injury required by the Drovers Contract in order to fix a liability that the railroad company, by its claim agent, had already admitted existed. If an admission of liability by the claim agent of the railroad company whose duty it was to adjust and settle claims for personal injuries does not dispense with the necessity for formal written notice of the fact of injury and how it came about, then the claim agent by admitting liability and failing to settle with one claimant can induce him to neglect to give the required notice and then remain quiet until the time expired and thereby defeat his claim, and could, at the same time call the attention of another claimant whom he wished to favor to the fact that the written notice must be given and when given, pay him in full while the other claim is lost. When a non-waiver rule is used as a shield for a fraud or deceit which causes a party to lose his rights secured to him by the law, it should not be enforced. We are not basing our conclusion in this case on the question we have just discussed but merely mention it to say that in our·judgment the non-waiver rule should not apply when to enforce it will result in at least a moral, if not a legal, fraud upon the party against whom it is enforced. [See Southern Pac. Co. v. Stewart, 233 Fed. 956.]

The chief reliance of defendant to support its contention that a demurrer to plaintiff's evidence should have been sustained because there was no showing that the written notice was given, is the case of

Gooch v. Oregon Short Line R. R. Co., 258 U. S. 22, 42 Sup. Ct. 192, 66 L. Ed. 443. The Drovers Contract in that case provided that in case of personal injury to the caretaker of live stock the notice in writing should be given within thirty days. That notice was not given and it was held that the plaintiff could not recover. The question of waiver was not involved and not discussed, but it was held that the Interstate Commerce Act of Congress does not apply to personal injury cases and hence the rights of the parties should be determined by the common law. The dissenting opinion of the minority members of the court held that the statute, which in terms only applies to freight, establishes a public policy which should be recognized by the courts in personal injury cases of the character involved in that case and which is the same as involved in this case. It then points out that the statute in relation to goods forbids any contract for giving notice that fixes a time less than sixty days and held that the same rule should apply to personal injuries to a caretaker of live stock while being transported by a common carrier. The majority opinion, however, held that the statute does not apply to personal injuries to a caretaker of live stock while being transported and that his rights must be determined by the common law. We followed that case on the former appeal in this case and on the authority of that case held that the rights of plaintiff in this case should be determined under the common law and then held that under the common law a provision of that kind in the Drovers Contract could be waived, and that, on the facts developed at the trial, there was sufficient evidence to sustain a finding that defendant had waived that provision of the contract. We adhere to that holding now. At the second trial the defendant introduced in evidence a copy of its live stock contract which embraced the bill of lading and the contract with the caretaker of the live stock, together with a certificate from the clerk of the Interstate Commerce Commission showing that this paper had been filed with the Interstate Commerce Commission prior to the injury to plaintiff and was in force at the time of the injury. On this showing it is contended that the case now before us is different from the case at is appeared on the former appeal, because, as contended, it being now shown that this form of contract had been adopted by defendant and filed with the Interstate Commerce Commission, it became binding on defendant and it could not, therefore, make or use any other form of contract and that brought it under the jurisdiction of the Interstate Commerce Commission and brought into effect the non-waiver rule. We find, however, that the same facts were present in the Gooch case, supra, on which we relied in the former appeal and still rely as holding that the Act of Congress does not apply but that the common law does apply. In the statement of facts in the majority opinion in that case, we find that the plaintiff in

that case agreed, as did the plaintiff in this case, that the carrier should not be liable for any injury to him upon the trip unless he or his legal representative should, within thirty days after the injury, give notice in writing of his claim, etc. It is then said: ''This agreement was required in pursuance of a regulation that was part of defendant's tariff duly filed with the Interstate Commerce Commission. Precisely the same facts that are present in this case, yet notwithstanding all that, the court held in that case that the common law governed in determining the rights of the parties and disposed of the case under the common law without any reference to the Act of Congress or the action of the Inter-State Commerce Commission. To follow that case, we must hold that the common law governs in the disposition of this case. The Interstate Commerce Commission is purely a creature of the Statute. Its powers and duties are defined by the statute and it would seem that until the statute shall extend their jurisdiction to personal injury cases, they have no power to act in relation to them in such a way as to deprive a party injured, or the carrier charged with responsibility for the injury, of any right possessed by them under the common law. The United States Supreme Court in the Gooch case, in discussing the statute and holding that it did not apply to personal injuries made the following statement: ''. . . It is impossible to suppose that Congress, when it was dealing with notice of claims and even with the claims of passengers for baggage (citing the statute) should not have thought of their claims for personal injuries, and as it passed them by, we must suppose that it was satisfied to leave them to the Interstate Commerce Commission and the common law.'' That means, as we understand it, that in personal injury cases the common law fixes the rights of the parties and the Interstate Commerce Commission must conform to it also and can make no regulation that would, in effect, change the law. We adhere to our former holding that the common law fixed the rights of the parties in this case and that the provision for giving a written notice in the form prescribed in the contract may be waived by defendant.

For the error noted in submitting to the jury the question of fraud, the judgment will be reversed and the cause remanded. *Bradley,* and *Bailey, JJ.,* concur.

### ON MOTION FOR REHEARING.

PER CURIAM:—Respondent in support of his motion for rehearing asserts that the testimony of plaintiff as to his signing the caretaker's contract is not correctly presented to this court and asks that a rehearing be granted him to enable him to secure a correction of the bill of exceptions and a correct transcript thereof in the abstract

of record before us. The abstract of record on file in this court shows that plaintiff testified that had he known what provisions were contained in the contract he would have complied with them while it is now alleged that, in fact, he stated that had he known the contents of the contract he would not have signed it. If this testimony were corrected it could make no difference in the result. The evidence would still be insufficient to take the question of fraud to the jury. [Austin v. Brooklyn Cooperage Co., — S. W. —; Crim v. Crim, 162 Mo. 544, 553-4, 63 S. W. 489; Anderson v. Meyer Bros. Drug Co., 149 Mo. App. 554, 130 S. W. 829; Worsley v. Wells, 281 S. W. 695, 701; Chicago, St. P. M. & O. Ry. Co. v. Bellewith (C. C. A. 8th Cir.), 83 Fed. 437, 439.]

Motion for rehearing will be overruled.